UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA

In re: )
**Ernie Reed** )
SS# 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 )
)
) No. 01-40891
and )
) Chapter 12
)
**Mary Reed**, )
SS# 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 )
)
)
**Debtors**. )

## CHAPTER 12 PLAN OF REORGANIZATION

Ernie and Mary Reed, debtors in possession in the above-captioned case ("Debtors"), submit the following Chapter 12 Plan ("Plan") for the adjustment of their debts:

### ARTICLE I
### Summary of the Plan

This Plan shall continue for a period of three (3) years from its effective date. The property of the Debtors is being valued, and the claim of each secured creditor is being treated as secured in the amount of the value of the property securing such claim. Cost of administration is being paid on the effective date of the plan unless otherwise agreed to or directed by the Court. Priority claims are being paid in full as allowed. The Debtors will pay to the Trustee no less than their disposable income over the term of the Plan for Trustee administration and distribution to unsecured creditors. The deficiency claims of all secured creditors will be treated as unsecured claims unless otherwise ordered by the Court.

### ARTICLE II
### Definitions

1. "Creditors" mans all entities having a claim against the debtors.

2. "Secured Creditor" means a creditor with a lien or security interest in

property of the Debtors.

3. "Claim" means a timely filed claim which has been allowed by the Court or a secured claim which is dealt with in the Plan whether or not a claim is filed.

4. "Effective Date" means the date on which the Order of Confirmation becomes final.

S. "Trustee"' means the Chapter 12 Trustee.

6. "Disposable Income" means all income received by the Debtors annually after deducting operating expenses, living expenses, and Plan payments.

## ARTICLE III
### ,Property Valuations

The Debtors propose to value their property as set out in Schedule "A" attached hereto.

## ARTICLE IV
### Liquidation Test

The Debtors have $ 0.00 net equity in their property, after deducting the amounts of the secured claims and taking into account their exemptions (see Schedule "A" attached hereto). No less than $ 0.00 of their disposable income shall be paid to the Trustee for payment of cost of administration and distribution to unsecured creditors over the life of the Plan.

## ARTICLE V
### Disposable Income

The Debtors' projections of gross income, operating expenses, salaries and Plan payments indicates disposable income annually in the approximate amount of $1,093.00. For the term of this Plan, all of the Debtors' disposable income, regardless of the amount, will be paid to the Trustee for payment of cost of administration and distribution to creditors ( see Schedule "B").

## ARTICLE VI
### Living Expenses

The Debtors' budget indicates that the Debtors' living expenses will be $33,576.00. However, the living allowance of the Debtors my be periodically increased or decreased upon application by the Debtors and approval by the Court without further notice to creditors if such modification does not increase their living allowance by more than $500.00.

## ARTICLE VII
### Classification and Treatment of Claims

1. <u>Class I</u>.    Costs of Administration. This class includes compensation and expenses of professionals, Court costs and all expenses incurred by the Debtors after the filing of their Petition and before the entry of the Order of Confirmation. All cost of administration claims, except compensation and expenses of professionals and Court costs, shall be paid in full on the effective date of the Plan. Claims for compensation and expenses of professionals and Court Costs shall be paid upon approval by the Court and as directed by the Court. Compensation and expenses of professionals shall be paid pursuant to 11 U.S.C. § 503 (b) and § 330.

2. <u>Class II</u>.    Priority Tax Claims. The Debtors have no tax claims due. The Debtors will pay their currently accruing post-petition taxes when due.

3. <u>Class III</u>.    Secured Claim of Farm Service Agency (FSA) (Real Property). FSA is secured in the amount of $48,400.00. This amount reflects the present value of the property securing the claim less the amount of any senior liens against the property and shall be paid in monthly installments beginning February 1, 2002 in the amount of $448.68. This payment reflects a fifteen- (15) year amortization with interest at seven and one half percent (7.5%) per annum on the outstanding balance.

Secured Claim of Farm Service Agency (Chattel). FSA is secured in the amount of $5,950.00. This amount reflects the present value of the property securing the claim less the amount of any senior liens against property and shall be paid in monthly installments beginning February 1, 2002 in the amount of $145.00. This payment reflects a four- (4) year amortization with interest at seven and one half percent (7.5%) per annum on the outstanding balance.

Secured Claim of State Employees Credit Union is to be reaffirmed and undisturbed. The State Employees Credit Union is secured in the approximate amount of $11,881.00. This reflects the present value of the property securing the claim less the amount of any senior liens against the property and shall be paid in its' undisturbed monthly installment in the amount of $368.00. This payment reflects a remaining 33-month amortization with interest at seven percent (7%) per annum on the outstanding balance.

4. <u>Class IV</u>.    Unsecured Claims. The unsecured claims of the Debtors will be paid through the Trustee in an amount equal to all disposable income for the term of the Plan (3 years). These claimants include the following:

| | |
|---|---|
| Deal-Rite Feeds | $ 27,015.40 |
| Grace Hospital | $2,681.20 |
| Morganton Anesthesia | $570.00 |

| | |
|---|---:|
| Wachovia Bank and Trust | $5,100.00 |
| Dr. Suneel Mohammed | $1,050.00 |
| TOTAL | $36,416.60 |

## ARTICLE VIII
### Execution of Plan

The Debtors propose to continue their farming operations and make the Plan payments out of farm income including post-petition earnings or other property of the estate pursuant to 11 U.S.C. § 1207 for the period of the Plan in dealing with unsecured creditors. The Debtors' projections of income, operating expenses, living expenses and Plan payments are reflected in Schedule "B", attached and incorporated hereto.

## ARTICLE IX
### Modification to Plan after Confirmation

The Debtors may request the Court to further modify this Plan before or after confirmation in accordance with the provisions of 11 U.S.C. § 1222 and § 1229.

## ARTICLE X
### Retention of Liens

All creditors whose claims are treated as secured in this Plan shall retain their liens on the collateral securing their respective claims until such claim are paid in full in the amount allowed secured.

## ARTICLE XI
### Sales Free of Interest

The Debtors may, during the term of this Plan, sell property free and clear of any lien claimant's interest as provided in 11 U.S.C. § 1206 at public auction or private sale after notice to creditors as required by 11 U.S.C. § 363, and the interest shall attach to the proceeds of the sale.

## ARTICLE XII
### Automatic Stay

Notwithstanding the entry of an Order confirming this Plan, the automatic stay provided by 11 U.S.C. § 362 shall continue in effect as to all property retained by the debtors until the Plan has been completed, terminated, the discharge entered, an Order entered lifting the stay, or the case is dismissed pursuant to 11 U.S.C. § 1208, whichever is earlier. The automatic

stay shall not apply to future crops or property given as collateral for post-confirmation operating loans.

## ARTICLE XIII
## Default

In the event the Debtors should fail to comply with any provision of the Plan, Modification, Order Confirming the Plan, or modification thereof, and said failure continues for a period of thirty (30) days, then without other notice, the Trustee shall take possession of the Debtors' property, issue his notice of sale and sell the Debtors' property.

If, prior to successful completion of this Chapter 12 Plan, the Debtors sell any of the secured property for an amount greater than the value established in this Plan, then all the proceeds, after costs of sale, shall be paid to the secured creditors in order of their indebtedness and priority as it existed prior to confirmation. In such event, any affected creditor shall be able to assert its right of marshalling to the extent it existed prior to confirmation. Further, Debtors shall apply for modification of this Plan to provide for any change in status or payments of any affected creditor.

## ARTICLE XIV
## General Provisions

1. Except as provided in the Plan, the Order confirming the Plan vests all property of the estate in the Debtors free and clear of all liens and encumbrances.

2. The Court shall retain jurisdiction over the Debtors and their property for the term of the Plan.

3. The Debtors shall have the right to grant security interests in future crops to obtain credit or cash for their farming operations. In addition, the Debtors may, upon approval of the Court, after appropriate notice and hearing, and in compliance with 11 U.S.C. § 364, grant a deed of trust for real property or a security interest in personal property for the purpose of obtaining monies.

4. The secured debt of any secured creditor may be further modified by agreement between the Debtors and the secured creditor without Court approval, or upon application of the Debtors and approval by the Court for cause after notice to the subject secured creditor and a hearing in compliance with 11 U.S.C. § 1229.

5. The debts adjusted by this Plan may be further modified by agreement between the Debtors and the creditors herein without court approval, or they may be modified upon application of the Debtors and approval of the Court for cause after notice to the secured creditor and a hearing on the same.

## ARTICLE XV
## Discharge

   Upon the Debtors' compliance with the provisions of the Plan for the term of the Plan, the Court shall enter a discharge which discharges the Debtors from all claims provided for in the Plan except as provided in 11 U.S.C. §§ 1222 (b) (5) and (9) and 11 U.S.C. § 523 (a).

         Respectfully submitted, this the 19th day of December, 2001.

         _____
         Annette Hiatt
         Staff Attorney
         NC State Bar No. 27891
         Land Loss Prevention Project
         P.O. Box 179
         Durham, NC 27702
         (919) 682-5969

## SCHEDULE "A"

## VALUES AND LIQUIDATION TEST

| Property owned by Debtors | Value | Lein | Equity |
|---|---|---|---|
| REAL ESTATE: | | | |
| House & 16.09 acre Farm | $ 48,000.00 | FSA $ 48,000.00 | $0.00 |
| Lot-1.08 acres parcel #1-72-1-58 | $ 1,806.00 | N/A | $1,806.00* |
| Lot-1.56 acres parcel 91-72-1-59 | $ 2,500.00 | N/A | $2,500.00* |
| SUB-TOTAL | $52,306.00 | $ 48,000.00 | $ 4,306.00 |
| EQUIPMENT: | | | |
| Trailer-Low boy gooseneck 14' | $100.00 | FSA $100.00 | $0.00 |
| Tractor-Ford 4610 | $ 5,000.00 | $ 5,000.00 | $0.00 |
| Loader-Ford 7209QT | $500.00 | $ 500.00 | $0.00 |
| Scrape Blade | $ no-value | | |
| Rotary Mower-Hardee | $ 350.00 | $ 350.00 | |
| Ford F350-1996 | $ 12,000.00 | State Employees Credit Union $ 12,000.00 | $ 0.00 |
| 1/2 undivided interest Road Tractor $2,400x1/2= | $1,200.00 | N/A | $1,200.00* |
| SUB-TOTAL | $ 19,150.00 | $ 17,950.00 | $ 1,200.00 |

ANIMALS

| | | | | |
|---|---|---|---|---|
| Cattle | | $ 5,000.00 | | $ 5,000.00* |
| Horses | | $ 1,975.00 | | $ 1,975.00* |
| | SUB-TOTAL | $6,975.00 | | $ 6,975.00 |
| TOTAL REAL PROPERTY | | $78,831.00 | $ 65,950.00 | $ 12,481.00 |
| PERSONAL PROPERTY: | | | | |
| Cash & Checking/Savings | | $627.00 | | $ 627.00* |
| Household goods | | $1,935.00 | | $ 1,935.00 * |
| Chevy TK 1978 | | $1,500.00 | | $ 1,500.00* |
| Ford Explorer (1997--flood vehicle) | | $4,000.00 | | $ 4,000.00* |
| | SUB-TOTAL | $8,062.00 | | $ 8,062.00 |
| | **TOTAL** | $86,893.00 | $65,950.00 | $  1,200.00* |
| | | | | $ 20,543.00 |

*Exemption

**SCHEDULE "B"
NET ANNUAL INCOME AND
PLAN PAYMENTS**

I. **INCOME**

    A) Crops & Livestock — $39,354.00

    B) Non-farm Income

    C) Spouse Non-farm income — $29,537.00

              **Total** — $68,891.00

II. **PLAN PAYMENTS**

    A) Family living @ 2,798,/month — $33,576.00

    B) FSA (real property) — $5,384.00

    C) FSA (chattel) — $1,776.00

    D) State Employees Credit Union — $4,416.00

              Sub-total — $45,152.00

III. **OPERATING EXPENSES**

1. Labor — $800.00
2. Machinery Repair — $200.00
3. Farm building and fence — $200.00
4. Seeds and Plants — $500.00
5. Fertilizers and Lime — $500.00
6. Feed Purchased — $2,000.00
7. Livestock Expenses — $5,500.00
8. Gasoline, Fuel and Oil — $3,200.00
9. Insurance — $1,616.00
10. Utilities — $1,020.00
11. Taxes — $1,510.00
12. Supplies purchased — $800.00
13. Shavings — $4,000.00
14. Truck cost (plan payment) — $4,416.00
15. Miscellaneous operation costs. — $1,000.00

               Sub-total — $27,262.00

IV.  <u>Trustee/Liquidation Test</u>

    (All disposal income to Trustee)    $ 0.00

V.  <u>TOTAL PAYMENTS</u>    $ 72,414.00

VI.  <u>DISPOSABLE INCOME</u>    $ 1,093.00

## CERTIFICATE OF SERVICE

The undersigned certifies that the CHAPTER 12 PLAN OF REORGANIZATION to which this certificate is affixed was served upon the Creditors, Bankruptcy Administrator and Trustee by first class mail, as listed below.

This the 19th day of Deceember, 2001.

*Annette Hiatt*
Land Loss Prevention Project
P.O. Box 179
Durham, NC 27702
(919) 682 5969

| | |
|---|---|
| Steven Tate<br>Bankruptcy Trustee<br>P.O. Box 1778<br>Statesville, NC 28677 | Bankruptcy Administrator<br>Western District North Carolina<br>402 W. Trade St., Room 200<br>Charlotte, NC 28202-1627 |
| Bankruptcy Clerk<br>Western District North Carolina<br>410 W. Trade St.<br>Charlotte, NC 28202 | State Employee's Credit Union<br>P.O. Box 1537<br>Morganton, NC 28680 |
| Wachovia Bank & Trust<br>1628 Browning Road<br>Columbia, SC 29226 | USDA Farm Service Agency<br>U.S. Attorney<br>301 New Bern Street, Suite 800<br>Raleigh, NC 27601-1461 |
| Morganton Anesthesia<br>P.O. Box 8008<br>Morganton, NC 28680 | Grace Hospital<br>2201 S. Sterling Street<br>Morganton, NC 28655 |
| Suneel Mohammed, MD<br>P.O. Box 99<br>Rutherford College, NC 28671 | Deal-Rite Feeds<br>109 Anna Drive<br>Statesville, NC 28625 |

# LAND LOSS
## PREVENTION
# PROJECT



**Stephon Bowens, Esq.,**
EXECUTIVE DIRECTOR

206 North Dillard Street
Durham, NC 27701

MAILING ADDRESS:
Post Office Box 179
Durham, NC 27702
(919) 682-5969
1-800-672-5839 (free call)
Fax (919) 688-5596

Satellite Offices:
☐ Legal Services of
the Coastal Plains
610 East Church Street

MAILING ADDRESS:
Post Office Box 564
Ahoskie, NC 27910
(919) 332-5124
1-800-682-0010 (free call)
Fax (919) 332-3317

☐ NCCU School of Law
1512 S. Alston Ave.
Durham, NC 27707

December 19, 2001

Clerk of Court
U.S. Bankruptcy Court
Western District of North Carolina
401 W. Trade Street
Charlotte, NC 28202

Re: *Reed Bankruptcy*, Case No. 01-40891

Dear Sir or Madam:

Enclosed are an original and two copies of the Chapter 12 Plan of Reorganization in the above-captioned matter.

Please return a file-stamped copy to me in the enclosed reply envelope.

Thank you for your assistance.

Sincerely,

Annette Hiatt
Staff Attorney

A member of:



NORTH CAROLINA
COMMUNITY
SHARES